### AXTELL v. LOPP et al.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 23, 1912.)

1. APPEAL AND ERROR (§ 837*)—SCOPE OF REVIEW—MATTERS CONSIDERED BELOW.

Where the judgment in an action to restrain enforcement of a judgment recited the sustaining of several exceptions to the petition and dissolved the injunction, but continued under date of the next day, and recited that plaintiff's application to file a trial amendment was granted, but that the court was of opinion that plaintiff's application to vacate the order dissolving the injunction should be denied, the trial amendment was considered by the court on the issue of continuing the injunction, requiring similar consideration on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3278; Dec. Dig. § 837.*]

2. JUDGMENT (§ 429*) — ENFORCEMENT — INJUNCTION.

Where the defendant in sequestration proceedings replevied the sequestered chattels, but before trial redelivered them to the plaintiff, his surety on his replevin bond is entitled to enjoin the enforcement of a judgment in favor of the plaintiff for the value of the property replevied and damages for the withholding, though it appeared that the defendant had not urged as a defense the redelivery of the chattels; for, while a party is bound to make his defense at his first opportunity, it would be inequitable to preclude the surety who had no control over the action from urging that defense, and compel him to pay damages which the plaintiff did not sustain.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 808, 810, 815; Dec. Dig. § 429.*]

3. JUDGMENT (§ 456*) — ENFORCEMENT — INJUNCTION—LACHES.

That a surety on a replevin bond in reliance on false statements of the defendant principal, who, after the disposal of the action, conspired with the plaintiff to defraud the surety, that he would settle the judgment against which the surety had a defense, and that it would be all right, delayed injunction proceedings for more than a year, will not, despite Sayles' Ann. Civ. St. 1897, art. 2991, providing that no injunction to stay execution on any judgment shall be granted after one year from the rendition, unless it appears that an application was delayed in consequence of fraud, preclude him from maintaining an injunction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 863–866; Dec. Dig. § 456.*]

4. INJUNCTION (§ 172*) — PLEADING — CONSTRUCTION.

While a temporary injunction may be dissolved upon a verified denial of the material allegations in the petition, averments in verified answer to a petition praying an injunction against enforcing a judgment on the ground that the property in litigation had been redelivered to plaintiff before the judgment that no article of such property had ever been returned to

---

plaintiff for credit on the judgment furnish no grounds for dissolution, because not equivocally denying the actual return.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 374–384; Dec. Dig. § 172.*]

Appeal from Tarrant County Court; Charles T. Prewitt, Judge.

Action by F. W. Axtell against A. B. Lopp and others. From an order dissolving a temporary injunction, plaintiff appeals. Reversed.

J. Y. Cummings and C. R. Bowlin, both of Ft. Worth, for appellant. Q. T. Moreland, of Ft. Worth, for appellees.

CONNER, C. J. This is an appeal from an order dissolving a temporary writ of injunction issued by the county court of Tarrant county. The case has been submitted to us upon the record without formal brief. In substance, stating it in its chronological order and omitting unimportant details, appellant's pleadings upon which he bases his prayer for injunction, and upon which we base our conclusions, show that in 1910 the Union Transfer Company, a private corporation, doing business in Ft. Worth, instituted its suit against one A. B. Lopp for the recovery of certain horses, buggies, and harness described in the petition, and alleged to be of an aggregate value of several hundred dollars; that at the same time said transfer company sued out a writ of sequestration which was duly served, and upon the happening of which the defendant Lopp replevied the property sequestered giving as one of the sureties on his replevy bond F. W. Axtell, the applicant for injunction, it being alleged that both Lopp and the other surety on the replevy bond are now insolvent; that before the final trial of the suit between the transfer company and Lopp, to wit, about the 23d day of December, 1910, appellant becoming anxious about his liability induced the said Lopp to return to the transfer company all of the property that had been so sequestered save one bay mare which had been accidentally killed in the meantime; that, notwithstanding such return, the transfer company continued the prosecution of its suit, and the said Lopp continued his defenses, and afterwards, to wit, on the 22d day of April, 1911, the final trial was had in which the transfer company recovered judgment for the value of the property sequestered, to wit, $560.50 and $250.50, for the hire of the property "while in the possession of defendant" against both Lopp and the sureties on his sequestration bond, including appellant.

It was alleged that upon the final trial Lopp failed to set up the fact of his said return of the property in December, 1910, for the alleged reason that he did not thereby wish to prejudice his final effort before the court and jury. It was further alleged that thereafter, on the 10th day of June, 1911, the transfer company caused an execution to be issued when for the first time the plaintiff in this suit, Axtell, ascertained the fact that the judgment had not been credited as Lopp represented it would be, and as the plaintiff herein believed would be done, and that he, Axtell, thereupon began efforts to have the matter corrected. The details of such negotiations need not be set out. We think it sufficient to say that it is further alleged, among other things, that the plaintiff, Axtell, was delayed in suing out his injunction, the petition therefor not being filed until the 4th day of June, 1912, by the representations and assurance of Lopp that he was again in the employ of the transfer company, and that he had a "trade up or deal up with it," whereby he himself would settle the judgment in full, if Axtell would "only keep still," but that, if suit was brought to enjoin the execution, it would "spoil everything," and prevent him from carrying out an arrangement with the company to discharge the judgment; that the plaintiff believed the assurances and representations, and was thereby misled and delayed from the institution of this suit to enjoin the execution until after the expiration of one year from the date of the original judgment. It is further alleged that Lopp in failing to set up the fact of said return of the property sued for and in assuring the plaintiff that he had made arrangements in substance to settle the judgment, etc., was acting in collusion with the transfer company and in fraud of the plaintiff's rights. The court below sustained appellee's motion to dissolve the temporary writ of injunction that had theretofore issued, and appellant has appealed as stated.

[1] In fairness to the trial court, it should perhaps be stated that some of the material, and perhaps some of the most material, allegations of appellant's pleadings as we have stated them were presented by a trial amendment, which appears from the recitations of the judgment to have been filed the day after the court sustained the motion to dissolve the injunction. While we have found no precedent plainly sustaining our conclusion, we, nevertheless, as indicated, have considered the allegations in the trial amendment. The same judgment which recites that the court sustained several special exceptions presented by the defendant and dissolved the injunction continues under the date of the following day, and recites that the defendant was required to give a refunding bond in the sum of $1,500, and that the application of the plaintiff, Axtell, to file a trial amendment was granted, and further recites, "But the court is of the opinion that the plaintiff's prayer to set aside the order heretofore entered dissolving the injunction should be and the same is hereby refused

and denied. To which action of the court plaintiff excepts and gives notice of appeal," etc., thus, as we think, indicating that after the hearing upon the original petition for injunction, and after the court had indicated its judgment that the petition was insufficient for the reasons urged against it, the court, nevertheless, continued to hold the matter in abeyance until the next morning when the final orders were made, as above stated. We are of the opinion, if necessary to our conclusion, that the final order of the court refusing to set aside its order dissolving the injunction was in its effect tantamount to a refusal to perpetuate the injunction upon both original and amended pleadings.

[2] So construing the pleadings and so concluding, we are of opinion that the court erred in its judgment. If it be true, as alleged, that pending the suit Lopp, in fact, returned the property, for the title and possession of which the suit had been instituted, the basis of the transfer company's suit ceased to exist, and it was, to say the least of it, contrary to good conscience and inequitable to months thereafter take judgment against the surety on the replevy bond, not only for the full value of the property that had been returned, but also for the value of its hire and use during the period that the plaintiff in the suit had been so in possession. Courts of equity are not without remedy to afford relief for such wrongs. See Clay v. Clay, 13 Tex. 195; Dickenson v. McDermott, 13 Tex. 248; Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728. In the case first cited, in discussing the contention that the defendant not having offered his payments in evidence on the original trial he was precluded from availing himself of them as grounds of defense in a suit brought upon such judgment, our Supreme Court say: "It is admitted that the position in its general application is well sustained by authority, and its effect would extend even to a case of judgment on a note wholly paid. But the defense of payment by some accident not being set up, judgment would go for the whole amount of this extinguished debt, and the defendant could not recover the money which he might be forced a second time to pay on this judgment, nor could he set up such payments as a defense to an action on the judgment. The rule, so far at least as it forever precludes the defense of payment, is not founded on morality or honesty, but on a principle of public policy that there should be some broadly marked line at which litigation should come to an end, that what has been or might have been decided in a suit shall not be reopened, and that judgments shall generally be conclusive evidence of their own rectitude and justice. That this is a salutary principle is acknowledged, that it is a matter of public interest that some end should be put to litigation is not to be questioned; but that it should be so rigorously applied as in all cases to exclude evidence of payment which might have been set up in the first action, had the defendant been vigilant, is doubted. The principle must indeed be potential which would require such sacrifice to its authority as the payment twice of the sum of $6,000 or $7,000, and especially when such sacrifice is demanded under the circumstances which characterize this case. One thing is certain, that this is a defense which is always just. About other defenses there may exist some dispute, but upon payment there can be none. It, in fact, extinguishes the demand of the plaintiff pro tanto. The debt, to the extent of the payment, has no existence, and the judgment has no foundation to rest upon."

In the second case Dickinson it seems had been sued upon a judgment which he sought to enjoin, alleging that the judgment was based upon a promissory note given by him and upon which by agreement made during the pendency of the suit he was entitled to a credit, and it was alleged that he relied on the agreement, and made no defense that his claim was not credited on the note according to the stipulation, but that "in fraud of plaintiff's rights judgment was taken for the whole amount." The Supreme Court in disposing of the case say: "Where a payment (especially after the commencement of suit) is made in confidence that it will be credited, and particularly where there is an agreement to that effect, and the credit is not given, but judgment is taken for the whole amount, the party thus wronged may have his remedy by injunction, or, if he be compelled to pay the judgment, he may by action recover the sum twice paid, and whether the payment be by money or property, or a just discount received or admitted as payment, cannot affect the rule." And the Supreme Court thereupon reversed the order of the trial court dissolving the temporary writ of injunction that had been issued. We are not unmindful of the fact that the principles indicated by the cases cited seem to be in conflict with the views of some of the law writers (see Freeman on Judgments, § 285, and note in 52 Am. Dec. 638), but we have not been able to find where the cases have been modified by our own courts, and we think the doctrine therein announced is wholesome, and has application in this case.

[3] Another serious question is whether the appellant sufficiently excused himself from his failure to sue out his injunction within the twelve months from the date of the judgment, as required by article 2991, Sayles' Texas Civil Statutes. In the case of Williams v. Lumpkin, 86 Tex. 641, 26 S. W. 493, it was held that the fraud which consisted only in taking judgment for something not due was not of itself sufficient excuse for the failure to sue out the writ of injunction within the time indicated by the

statute. This statute reads, however, that: "No injunction to stay an execution upon any valid and subsisting judgment shall be granted after the expiration of one year from the rendition of such judgment, unless it be made to appear that an application for such injunction has been delayed in consequence of fraud or false promises of the plaintiff in the judgment practiced or made at the time of or after the rendition of such judgment or else from equitable matter or defense arising after the rendition of such judgment." As said, inter alia, in Clay v. Clay, supra: "Where partial payment is made in the progress of the proceedings, it would be no strained presumption to infer that it was done on a trust and confidence that such payment would be duly credited, and that it would not be required of the defendant to be very vigilant in setting up this payment as a defense in order to prevent judgment for the whole amount." This, as it seems to us, is particularly true, where the defendant against whom judgment is rendered is but a surety who is not made an actual party to the proceedings, and against whom judgment is rendered by virtue of the statute without notice, and where, as is here alleged, he was relying upon the statement of the defendant in the suit that it had been agreed that credit should be allowed for the property returned. Under such circumstances, we think the court will look with less scrutiny to the excuse offered for the delay in suing out the writ of injunction. Appellant insists that from the averments of the original petition excluding those of the trial amendment it sufficiently appears that Lopp and the transfer company colluded together for the purpose of procuring an unjust judgment against him, but, whether this inference be justifiable or not, the allegations of the trial amendment would seem to afford reasonable excuse for appellant's deferred action in suing out his writ. As seen, it is alleged that Lopp and the transfer company conspired together in all of the proceedings for the unjust purpose set forth, and that even after the issuance of the execution, and in furtherance of the alleged conspiracy, Lopp gave specific assurances which would render action by injunction altogether unnecessary. We think on the whole that the pleadings should receive a more liberal construction than that insisted upon by appellee.

[4] Appellee insists that his answer, which is duly verified, constitutes a denial of the material allegations on the plaintiff's part that the property sued for in the original suit had been returned as alleged, but, while courts of equity will be authorized in dissolving an injunction when the material allegations in the petition therefor have been clearly and fully denied under oath, yet in the instance before us we do not think appellee's answer can be given any such effect.

The denials relied upon, which are several times in substance reiterated, are as follows: "That no article of said property and none of said property, or any part thereof, either horses, buggies, or harness, was ever returned to the Union Transfer Company for credit on said judgment, or was ever received by the Union Transfer Company at any time or at any place whatsoever for credit on said judgment; that no agent of the Union Transfer Company ever agreed to accept at any time or at any place any part of the said property or all of said property and to give credit on said judgment for the same." As indicated, there are other allegations in the answer of like effect, but none of them are more explicit than those last above quoted, which we think by no means amount to a denial of the fact alleged by the appellant that the property sued for in the original suit was in fact returned by Lopp before the judgment against appellant. The answer indicates only that such property was not received for a credit on the judgment. If in fact received as alleged, it would seem to be immaterial that there was no agreement at the time that credit therefor should be allowed, as the law itself in furtherance of justice will imply such an agreement. So that on the whole case we think the court erred in dissolving the injunction, or at least in refusing to maintain it after the duly verified trial amendment had been filed by the court's permission.

It is ordered that the decree of the trial court dissolving the injunction be set aside, and that this conclusion be certified below for observance.