ELEANOR AND JOHN R. SPANN v. MICHAEL CRUMMERFORD.

A judgment of another State, like a judgment of this State, is not barred until ten years after the last regular act of diligence; and where the law of such other State is not proved, the question whether acts of diligence have been regular; as, for example, whether an execution has been issued or returned in due time, must be determined by our own laws.

It seems that a return of *nulla bona* is not an act of diligence, and will not prevent the bar of limitation, although regularly made within ten years.

Error from Washington. Tried below before the Hon. R. E. B. Baylor.

Spann v. Crummerford.

The suit was commenced Sept. 5th, 1856; the judgment sued on and the execution, were made parts of the petition; the judgment was dated July 18th, 1846; the execution was addressed to all the Sheriffs of the State, was dated July 28th, 1846, and was indorsed as follows: Lodged, 28 July, 1846. Thos. J. Wilder, S. S. D. Nulla bona, Aug. 19, 1846. W. A. Colclough, D. S. Turned over by Thos. J. Wilder, 12th February, 1848. H. Skinner, S. S. D. Nulla bona, 1848. W. E. Monzon, D. S. The benefit of the statute was claimed by exception, plea and instruction to the jury, and overruled.

*A. H. Willie*, for plaintiffs in error. It is respectfully submitted in the first place, that the judgments of a sister State are barred from being enforced in our Courts, after the lapse of ten years from the date of their rendition. See Clay v. Clay, 13 Tex. R. 204, and Fessenden v. Barrett, 9 Id. 475. Neither of these decisions is exactly upon the point, but we must believe from the important differences which exist between the cases wherein they are made, and the case at bar, and from the reasoning of the Court in them, that it will come to the conclusion without difficulty, that the cause of action in the present case was entirely barred at the time of its institution.

Although the judgments of sister States assimilate themselves in many respects to domestic judgments, many important differences exist between them; and although the former are conclusive evidences of debt, yet all the proceedings had upon them subsequent to their rendition are not entitled to the force and effect which such proceedings receive when had upon domestic judgments. A domestic judgment may be enforced by an execution issued thereon within our State; whereas no execution can issue in our State upon judgments rendered in another. A *scire facias* lies to revive a judgment of our State which has become dormant through laches. No action of *scire facias* can be brought in our Courts to revive the judgments of a sister State. Many other important distinctions could be drawn between the two classes of judgments, which would reduce the judgments of sister States far below our own in importance, though by the Constitution, Acts of Congress and the adjudications of the Courts, they are elevated above the level of an ordinary foreign judgment.

But the most important distinction between such judgments, to be considered in the determination of the point before the

Court, is this: the necessity of bringing suit upon a domestic judgment to enforce it in our Courts does not arise until the judgment has been suffered to lie a year without execution; but the necessity for a suit upon a judgment of a sister State in order to enforce it in our own State, arises so soon as that judgment is obtained. The difference between the effect of an execution issued upon a domestic judgment, and the effect of one issued upon the judgment of a sister State, is this: the former is an act of diligence, the strongest which can be used by the plaintiff to enforce his judgment and prevent the necessity of bringing any suit to keep it alive; but the issuing of executions upon the judgments of another State is not an act of diligence which prevents the necessity of bringing a suit to enforce such judgments in our State. This construction makes the judgment of a sister State a conclusive record evidence of debt, but one which cannot be enforced in our Courts except by suit; and an action of debt in said Courts is the only act of diligence which they can recognize as having been used upon it.

Again, although a domestic judgment upon which execution has not issued within a year does not become dormant until the end of that time, yet the action to revive such judgment must be commenced within 10 years from the date of the same, and not 10 years from the time it became dormant, which would be eleven years from the time of its rendition. Hence, our Supreme Court in Fessenden v. Barrett above cited, when they establish a time at which the statute shall commence to run against domestic judgments, where executions have issued within the year, but have not been kept up from Term to Term, do not make the bar to commence against such a judgment from the time it became dormant, but from the time of the issuance of the last legal execution.

But if the statute of limitations does commence to run against the judgment of a sister State from the date of the issuance of the last execution thereon, then is the judgment still barred; for the last and only execution on it issued on the 28th of July, 1846, more than 10 years before the institution of this suit.

The only foundation upon which the judgment of the Court below can rest, is the fact that the two following indorsements are found upon the execution: " Turned over 12 Feb'y, 1848," " Nulla bona 1848," indorsements which have no meaning when found upon an execution already returned 18 months before. Besides the return of an execution is not an act of legal dili-

gence to enforce it; a levy or a sale might be, but a return is anything else. It is therefore insisted that the statute does not commence to run against a domestic judgment, from the date of the return of the last execution; much less does it against the judgment of a sister State; and still less when that return is evidenced by the words "Nulla bona 1848" indorsed on an execution already *functus officio.*

*Bassett & Bassett,* for defendant in error. Legal diligence is defined in Bennett v. Gamble, (1 Tex. R. 13,) to be the use of those means which the law has placed in the hands of a party to enforce his rights. Under the decisions of the Courts, and in common sense, to bar a party of his remedy to enfore a right it would seem that he must have been negligent for the whole period prescribed; must for ten years have failed to perform acts which he might have performed to secure his right. Where the statute required suits to be commenced within a certain time, and the question was what act constituted the commencement of the action, the rule of the Court of K. B. was, that the Bill of Middlesex or *latitat* was a process sufficient to arrest the statute. The reasoning was, that the statute only designed to bar those who had forborne to exercise diligence in the assertion of their rights during the period prescribed; and although the *latitat* or Bill of Middlesex was not a step in the action, yet it manifested a diligence upon the part of the plaintiff, sufficient to stop limitation. (See Angell on Limitation, 391, § 311.)

Applying then the same principle to the present case. The plaintiff sues out an execution, which is returned in 1848. Until the return of that execution, what act of diligence could he perform? None. He could not sue out a new execution. (8 Johns. R. 337.)

The case of Fessenden v. Barrett, (9 Tex. R. 475,) is much relied on by the plaintiff in error, and yet the point there decided is not that which arises in the case at bar. That was a suit brought on a domestic judgment, and under every phase the action was barred; more than ten years had elapsed from the return of the only valid execution. It there appeared affirmatively that the execution issued in 1840 was a nullity, and the Court was not therefore called upon to determine whether had there been a return of a valid execution within ten years, the action would have been barred. It does not appear affirmatively

in this case that the execution returned in 1848, was a nullity. On the contrary, the presumption is that the officers who issued and returned it, did their duty, and it certainly lies upon the party who would overthrow that presumption, and defeat an honest demand by the harsh rule of limitation, to show affirmatively and clearly, that those officers were guilty of malfeasance in office, and that the execution thus issued and returned by them was a nullity. "It is incumbent upon the defendant to show that the action was barred at the time the suit was commenced;" says Wheeler, Justice, in Duggan v. Cole, (2 Tex. R. 396.) "The burden of proof is upon him." Particular attention is called to the opinion delivered by Wheeler, J., on the motion for a rehearing in Duggan v. Cole, just cited.

ROBERTS, J. This is a suit brought upon a judgment rendered in the State of South Carolina.

The plaintiffs in error, who were defendants below, pleaded the statute of limitations of ten years.

There was a verdict and judgment for defendant in error, who was plaintiff below.

The question in the case is from what period in the progress of the proceedings shall the statute commence running; from the date of judgment, of issuing the execution, or of entry of return by the Sheriff of *nulla bona*.

It has been held that the same rule applies to a judgment of a sister State as to a judgment of this State. (Clay v. Clay, 13 Tex. R. 195; Allison v. Nash, 16 Id. 560.) If no execution had issued upon the judgment, our statute would have applied directly to the case, and would have commenced running from the date of the judgment. (Hart. Dig. Art. 2378.) An execution having issued, a limitation of ten years, by analogy to the statute, will be applied, commencing to run from the date of the last execution or the last act of diligence. (Fessenden v. Barrett, 9 Tex. R. 475.)

It is admitted that if it commenced running from the date of the judgment or the execution, the claim is barred by a few months. It is contended, however, that the entry on the execution, issued in 1846, of *nulla bona*, by one signing his name as Sheriff in 1848, shows an act of diligence within ten years before the commencement of this suit.

From an examination of the facts in the case of Fessenden v. Barrett, it is obvious that the Court attached no importance to

a return of *nulla bona* on the execution made within the ten years, and the Opinion does not even advert to the fact. The entry of *nulla bona* cannot be an act of diligence; because it is an expression indicating the entire absence of an act, done in reference to the collection of the money under the execution.

There is another imposing difficulty in the case. This entry of *nulla bona*, which is within the ten years, was made on an execution more than a year after it had been issued; and there is no averment or proof, that, by the laws of South Carolina, the writ of execution continued during that time to be valid, efficient process. In the absence of such averment and proof our own rules of law will be applied to the facts to determine their legal effect.

The execution, then, must be held to have lost its validity as process in (at most) six months from its date. Any act under and by virtue of it after that time, would be unauthorized; and cannot be said to be an act of diligence.

We conclude therefore that the statute of limitations commenced running on this claim from the date of the execution, which was the last act of diligence, exhibited in the record; and that being more than ten years before the commencement of the action, the claim was barred. The judgment is reversed and cause remanded.

Reversed and remanded.