GALE MFG. CO. v. DUPREE et al.†

(Court of Civil Appeals of Texas. Austin. March 13, 1912. Rehearing Denied April 24, 1912.)

1. APPEAL AND ERROR (§ 1010*)—REVIEW—FINDINGS OF FACT.

Findings of fact supported by evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

2. HUSBAND AND WIFE (§ 255*)—PROPERTY OF WIFE — SHARES OF STOCK — COMMUNITY PROPERTY.

Shares of stock purchased by the separate means of a married woman did not become community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 900–902; Dec. Dig. § 255.*]

3. JUDGMENT (§ 866*) — REVIVAL—DORMANT JUDGMENTS.

A judgment may be revived by a scire facias or other proper proceeding unless the right be barred by limitations.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1603–1607; Dec. Dig. § 866.*]

4. JUDGMENT (§ 866*) — REVIVAL—DORMANT JUDGMENTS.

An action of debt or scire facias to revive a judgment may not be brought until it appears that the judgment is dormant so as to render the second judgment more efficacious than the first, and limitations will not commence to run until the judgment has become dormant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1603–1607; Dec. Dig. § 866.*]

5. JUDGMENT (§ 866*) — COMPUTATION OF PERIOD — ACCRUAL OF RIGHT — ACTION ON JUDGMENT.

Under Rev. St. 1895, arts. 1664, 2326a, which provide that, where the first execution on a judgment has issued within 12 months, the judgment shall not become dormant unless 10 years shall have elapsed since the issuance of execution thereon, the cause of action on a judgment on which execution had been issued within the 12 months would not accrue until 10 years after the issuance of the last valid execution, and the four-year limitations will start to run at that time, under Rev. St. 1895, art. 3358, rather than under Rev. St. 1895, art. 3361, providing for revival of a judgment by scire facias or an action of debt within 10 years after its date and not thereafter.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1603–1607; Dec. Dig. § 866.*]

6. JUDGMENT (§ 853*) — "DORMANT JUDGMENT."

A "dormant judgment" is one that has not been satisfied or barred by lapse of time, but is temporarily inoperative, so far as the right to issue execution is concerned (citing 3 Words & Phrases, 2183).

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1565–1570; Dec. Dig. § 853.*]

Error from District Court, McLennan County; Marshall Surratt, Judge.

Action by Gale Manufacturing Company against W. E. Dupree and others. From a judgment for defendants, plaintiff brings error. Affirmed in part, and in part reversed and rendered.

H. C. Lindsey, for plaintiff in error. Sleeper, Boynton & Kendall, for defendants in error.

KEY, C. J. The plaintiff, Gale Manufacturing Company, filed its original petition in this cause on the 20th of February, 1907, against the defendants W. E. Dupree, his wife, Mollie E. Dupree, and the Dupree Commission Company, a corporation, seeking to have certain property standing in the name of Mrs. Dupree and the Dupree Commission Company adjudged to belong to W. E. Dupree, and subject to sale to satisfy a judgment obtained by the plaintiff against W. E. Dupree on June 21, 1897. The plaintiff alleged that in January, 1898, the defendant W. E. Dupree, being insolvent and deeply in debt, resorted to the scheme of organizing a corporation known as the Dupree Commission Company, for the purpose of putting certain property beyond the reach of his creditors, including the plaintiff; and that in order to accomplish that purpose he subscribed for the greater part of the stock of the corporation in the name of his wife,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

Mollie E. Dupree, but paid for the same with funds belonging to himself and subject to the payment of his debts. It was also alleged that in like manner, and for a similar purpose, he purchased certain real estate and had the deed thereto made to the Dupree Commission Company, of which he was the president and general manager. The plaintiff filed a first and second amended original petition, which are not contained in the transcript, and on January 15, 1910, it filed its third amended original petition, which set out the facts above referred to, and alleged that on September 28, 1897, an execution was issued upon its judgment against W. E. Dupree; and, in addition to the prayer for a decree subjecting the property referred to to the plaintiff's judgment, it prayed for a judgment against W. E. Dupree upon its former judgment. All the defendants answered by general denial, pleas of limitation, and Mrs. Dupree pleaded specially certain proceedings in the bankrupt court in the case of W. E. Dupree, bankrupt, as an estoppel. There was a nonjury trial, which resulted in a judgment for the defendants, and the plaintiff has brought the case to this court by writ of error.

[1] At the trial it was admitted by the defendants that on June 21, 1897, the plaintiff recovered a judgment against the defendant W. E. Dupree in the district court of McLennan county, for the sum of $3,261.49, and that execution was issued thereon on the 28th day of September, 1897, directed to the sheriff of said county, where W. E. Dupree then resided, and that no execution has issued since that date, and that said judgment remains unsatisfied. The trial judge filed findings of fact and conclusions of law, in which it was, in effect, found and held that the stock in the corporation standing in Mrs. Dupree's name was her separate property, and that the real estate standing in the name of the Dupree Commission Company was the property of that corporation and was not paid for with funds belonging to W. E. Dupree; and, there being testimony which sustains these findings, we overrule the assignments of error which assail them and adopt them as findings by this court. W. E. Dupree gave testimony as a witness amply sufficient to sustain the finding that the stock referred to was paid for with the separate funds of Mrs. Dupree, and that the real estate was paid for with funds belonging to the corporation, and that the corporation was organized in good faith.

[2] Counsel for plaintiff in error contends that, inasmuch as Mrs. Dupree was a married woman at the time she subscribed for the stock, therefore, and for that reason, the stock so subscribed for became community property, although it was paid for with her separate means. We cannot sanction that contention. If it be conceded that under the corporation statute of this state, as it then existed, a married woman could not lawfully become an incorporator, officer, or director of a private corporation, we do not think it would be proper to hold that she could not lawfully become a stockholder in such corporation, and that if she attempted to do so, and invested her separate means as such, the result would be to destroy her separate title to the stock, and invest the same in the community estate. The cases which hold that, when a married woman permits her separate means to be invested in a continuing mercantile business, the property purchased therewith becomes community property, are not considered analogous.

All the assignments presented in plaintiff in error's brief have been duly considered, and none is regarded as tenable, except the first, which complains of the action of the trial court in not rendering judgment for the plaintiff against W. E. Dupree upon the original judgment against him. The trial court held that the plaintiff's right to have its original judgment revived was barred by limitation, and that holding is apparently supported by Willis v. Stroud, 67 Tex. 516, 3 S. W. 732. That was a suit to revive a judgment which was rendered in June, 1875; the petition seeking to revive it being filed in September, 1885. The petition alleged that an execution was issued during the month of June, 1875, and the defendant, by a special exception, interposed the defense of 10 years' limitation, which demurrer was sustained, and the Supreme Court held that ruling to be correct. In view of the doctrine announced in later decisions by the same tribunal, and of a deep conviction that that decision is unsound, we have reached the conclusion that it should not be followed in this case. The respect which we have always entertained for that able court, and especially for Chief Justice Willie, who wrote the opinion referred to, impels us to state at some length the reasons for the course pursued by this court, which will now be done.

[3, 4] At the time the common law was adopted in this state, the right to revive a dormant judgment by scire facias, or other proper proceeding, was well imbedded in that system of law; and the plaintiff in this case was entitled to that relief, unless it was barred by limitation. In the very nature of things, limitation cannot begin to run against a cause of action until the right of action comes into existence, and therefore it becomes necessary to determine in this case when the plaintiff's cause of action arose; and, while a different rule may prevail in some jurisdictions, we hold that no action of debt, or merely for the purpose of procuring an execution, can be maintained upon a judgment until such judgment becomes dormant. Such, in effect, was the holding of our Supreme Court in Parks v. Young, 75 Tex. 278, 12 S. W. 986, and Stevens v. Stone, 94 Tex. 415, 60 S. W. 959, 86 Am. St. Rep. 861. The reasoning

of Chief Justice Gaines in support of that proposition in the latter case seems to us to be unanswerable, and we therefore hold, in the language of the opinion in that case, that: "The purpose of judicial actions is to afford remedies for the enforcement of rights, and where the result of a suit prosecuted to success is to give the plaintiff no better remedy for the enforcement of his right than he had before, no reason other than a technical one can exist for permitting its prosecution. Since equity discourages a multiplicity of suits and will in a proper case enjoin vexatious litigation, and since under our blended system equitable principles in every case have their full scope and effect, it would seem that our court should never allow a suit upon a judgment unless it should be made to appear that the second judgment would be more efficacious than the first."

In Willis v. Stroud, supra, Chief Justice Willie in support of his opinion cites Fessenden v. Barrett, 9 Tex. 475, De Witt v. Jones, 17 Tex. 620, and Spann v. Crummerford, 20 Tex. 216. and undertakes to distinguish Willis v. Stroud from Black v. Epperson, 40 Tex. 162. In Fessenden v. Barrett, supra, the original judgment was rendered in October, 1838, and an execution was issued thereon during the same month. A suit to revive the judgment was commenced August 28, 1850, and the Supreme Court. held that, as 10 years had elapsed between the issuance of the execution and the commencement of the suit, the right to revive the judgment was barred. Then, as now, there was no statute expressly and specifically providing a period of limitation where the suit was founded upon a former judgment upon which an execution had issued within 12 months after rendition of ·the judgment; but there was at that time, as there is now, a statute reading thus: "A judgment in any court of record within this state where execution has not issued within twelve months after the rendition of the judgment, may be revived by scire facias or action of debt brought thereon within ten years after the date of such judgment and not after." Rev. Stat. art. 3361. In deciding that case Chief Justice Hemphill stated that there was no provision of the statute of limitation directly applicable to the case; and then, following the practice of the chancery courts, he held that the statute just quoted, while it prescribed a period of limitation only as to judgments upon which no execution had been issued, furnished a rule of analogy applicable to judgments upon which an execution has been issued within one year, and held that in the case then under consideration limitation began to run from the time the execution referred to was issued. In that case there was another execution issued in June, 1840, but the court held that it was void and did not affect the question of limitation. Therefore, assuming that the execution issued in · Oc-

tober, 1838, kept the judgment alive until October, 1839, still, as the law then stood, the judgment then became dormant, and the right of action to have it revived then accrued; and as suit to revive it was not commenced until August, 1850, it was properly held to be barred on account of the application by analogy of the statute quoted above, and on account of the fact that more than 10 years had elapsed after the cause of action accrued.

De Witt v. Jones, supra, was an action to revive a judgment rendered April 20, 1849. No question of limitation seems to have been presented; but the court held that, although an execution had issued within 12 months from the date of the judgment, and other executions had also issued, that as more than 5 years had elapsed between the issue of the last execution and the filing of the suit, the judgment had become dormant on account of the failure to have executions issued annually, and that the plaintiffs had the right to maintain the action to revive the judgment. The reasoning upon which that case is based supports our decision in the case at bar.

In Spann v. Crummerford, supra, it was merely held that a judgment of another state, like a judgment of this state, is not barred until 10 years after the last regular act of diligence; and when the law of such other state is not proved, the question whether acts of diligence have been regular, as, for example, whether an execution has been issued or returned in due time, must be determined by our own laws, and that the issuance of execution, and not the return of the sheriff thereon, is the test of diligence. We fail to see wherein these decisions support the conclusion reached in Willis v. Stroud, except that in Fessenden v. Barrett it was held that limitation began to run from the issuance of the execution; but, as will be shown hereafter, on account of the nonexistence of a subsequently enacted statute, which seems to have been in force when Willis v. Stroud was decided, the judgment in Fessenden v. Barrett became dormant within one year after the issuance of the execution, and such dormancy gave rise to the cause of action asserted in that case.

[5] At the time the earlier decisions referred to were made, there was no statute prescribing when a judgment upon which an execution had been issued within 12 months after its rendition would become dormant; but on February 14, 1860, the Legislature enacted a law declaring that, whenever a judgment shall be rendered by any court of this state, execution may be issued thereon by the court or clerk, and that "said judgment shall not become dormant unless ten years shall have elapsed between the issuance of executions on the same," and that statute has been re-enacted and is now embodied in articles 1664 and 2326a of the Re-

vised Statutes of 1895. The act of February 14, 1860, was construed by the Supreme Court in Black v. Epperson, supra, in which it was held to apply to a judgment previously rendered, and that such judgment did not become dormant until 10 years had elapsed after the issuance of the last execution legally issued. Hence it seems to us that the following conclusions are not only logical, but that they are necessarily sound and correct: First, that the plaintiff's judgment against Dupree did not become dormant until the 28th day of September, 1907; second, that prior to that time no cause of action to revive that judgment existed, and therefore he had no right to maintain an action for that purpose; and, third, that when he set up that cause of action and asked to have the judgment revived, less than four years from the accrual of that cause of action had elapsed, and the right asserted was not barred by either the ten or the four years statute, and, certainly, no other period of limitation could apply.

To hold that limitation began to run from the date of the issuance of the execution upon the judgment would be to hold that the cause of action was barred before it came into existence; and this court is not willing to commit itself to such an absurd proposition. We concede that while a judgment upon which no execution has issued does not become dormant until the expiration of 12 months after its date, the Legislature has the power, as it has done, to enact that such judgment shall be barred after the lapse of 10 years from the date of its rendition, although the effect of such enactment is to allow only 9 years after the accrual of the cause of action in which to sue thereon. But merely because of the enactment of the statute referred to in reference to judgments upon which no execution has been issued, it ought not to be held that the diligent litigant, who has caused an execution to issue upon his judgment, is thereby cut off from any right to have the same revived after it becomes dormant. Such a construction and such a holding would place a penalty upon diligence and a premium upon negligence, and would lead to the erroneous conclusion that, when a judgment upon which an execution is issued within 12 months from its date becomes dormant, it loses all of its vitality and ceases to be evidence of an existing debt.

[6] In ordinary parlance a "dormant judgment" is understood to be one that has not been satisfied or barred by lapse of time, but is temporarily inoperative, so far as the right to issue execution is concerned; and we are satisfied that such was the sense in which that expression was used by the Legislature in prescribing what would constitute a dormant judgment. 3 Words & Phrases, 2183; Draper v. Nixon, 93 Ala. 436, 8 South. 489.

Unless Willis v. Stroud was decided upon the assumption that an action of debt could be maintained upon a judgment before it became dormant, it is difficult to understand how the conclusion could have been reached that the action in that case was barred; and, for the reasons stated, we are unwilling to follow that decision. While the law is not as exact and accurate as the science of mathematics, some of its propositions are self-evident, and one of these is that a cause of action cannot be barred by limitation before it exists; and we therefore hold in this case that limitation did not begin to run against the action to revive the former judgment until the lapse of 10 years after the issuance of the execution thereon, for the reason and because that cause of action did not accrue until the lapse of such period of time.

Perhaps another reason exists for declining to follow the decision rendered in Willis v. Stroud, which is this: The opinion shows that the decision there made was based upon Fessenden v. Barrett, and other decisions rendered at a time when it seems that the four-year statute of limitation had not been enlarged so as to include all actions for which no limitation was otherwise prescribed, which is now embodied in our statute of limitations, and constitutes article 3358 of the Revised Statutes of 1895. There being no statute of limitations which specifies the time within which an action shall be brought to revive a judgment upon which an execution has issued within 12 months from the date of its rendition, such cause of action falls within the purview of article 3358, and therefore it is not necessary nor proper to look to or apply any other statute of limitation; and article 3358, in express terms, fixes the period of limitation at four years *after the right of action accrues*. A reasonably thorough, though possibly not exhaustive, examination has led us to the conclusion that the substance of article 3358 was no part of the law of limitations at the time Fessenden v. Barrett was decided, but was enacted at a much later date; and, if that is true, it would seem that after that enactment no reason could exist for looking to some other statute relating to an analogous subject in this or any other class of cases. In other words, Fessenden v. Barrett, and the cases which follow that decision, rest upon the theory that there was no statute prescribing a period of limitation for that class of cases, and therefore, by analogy, another statute of somewhat peculiar phraseology was applied. But since the enactment of article 3358 there is a statute which was in force when the case at bar was tried, and which is still in force, which prescribes a period of limitation for this class of cases; and therefore no other statute should be considered; and, as four years have not elapsed *after the right of action accrued*, the plain-

tiff's cause of action for revival of the former judgment was not barred, according to the plain language of article 3358.

The defendant W. E. Dupree did not interpose as a defense his discharge in bankruptcy, and therefore, if he has such discharge, it cannot be considered.

For the reasons stated, as between the plaintiff in error and defendant in error W. E. Dupree, the judgment will be reversed and here rendered. reviving the plaintiff's former judgment and authorizing execution to issue thereon. As between the plaintiff and the other defendants, and in all other respects, the judgment will be affirmed.

Affirmed in part, and in part reversed and rendered.