L. C. BARRETT ET AL. v. THE HENRIETTA NATIONAL BANK.

No. 2762.

1. **Powers of Receiver of National Bank—Illegal Contract.**—The law regulating the appointment of receivers of the property of national banks and declaring their powers and duties does not recognize the existence of the power attempted by the receiver in his contract with appellant in giving him control as an attorney of a mortgage held by the bank, and to contract that the attorney have one-half of the land or moneys realized upon the mortgage.

2. **Same—Recitals.**—The receiver not having power to contract directly to give a a contingent share in the recovery under a mortgage, his recitals in such contract would

not operate as a conveyance, nor would such recitals operate to transfer an interest in real estate not the subject of such contract.

APPEAL from Clay.   Tried below before Hon. P. M. Stine.

This was an action of trespass to try title, brought January 21, 1889, in the District Court of Clay County by appellant L. C. Barrett against appellee the Henrietta National Bank.   The appellant L. C. Barrett sought to recover 153 acres in Clay County, all of the southeast quarter of Texas & New Orleans Railroad Company section No. 2, patented to E. F. Ikard, except 7 acres sold by Ikard to the Fort Worth & Denver City Railroad Company, and lot 5 in block 14, in the town of Henrietta, Clay County, Texas.   On March 23, 1889, the appellant Exchange Bank intervened in the suit, claiming all of said land against plaintiff and defendant.   The case was tried April 17, 1889, without a jury, and resulted in judgment in favor of defendant the Henrietta National Bank as to all the land except an undivided half of said lot 5 in block 14, for which half judgment was rendered for plaintiff on the disclaimer of defendant.   From this judgment both the plaintiff and the intervenor prosecuted this appeal.

The facts sufficiently appear in the opinion.

*J. A. Templeton* and *L. C. Barrett,* for appellant Barrett.— 1. Where a person assumes to act as agent for a corporation, but without legal authority, and makes a contract and the corporation receives the benefit of it and appropriates the property acquired under it, such acts will ratify the contract and render the corporation liable thereon.   Railway v. Gentry, 69 Texas, 625; Mora. on Priv. Corp., secs. 706, 724, and authorities; Herm. on Estop., sec. 555.

2.   When two persons agree together to acquire title to real estate, and in pursuance of said agreement land is acquired and taken in the name of one, such an one holds as trustee for the other to the extent of the other's interest.   Bailey v. Harris, 19 Texas, 109; James v. Fulcrod, 5 Texas, 512; Watkins v. Gilkerson, 10 Texas, 340; Smock v. Tandy, 28 Texas, 130; Gardner v. Rundell, 70 Texas, 453; Reed v. Howard, 71 Texas, 204; De Leon v. Trevino, 49 Texas, 88; Gonzales v. Chartier, 63 Texas, 36; Casey v. Credit Mobilier, 2 Wood, 77; Bank v. Meadowcroft, 95 Ill., 124; Taylor v. Bemis, 110 U. S., 42.

3.   An agreement between two persons to acquire real property by litigation, one to do the work and pay the expense and the other to furnish the claim upon which to proceed, although it contain a clause that neither is to compromise without the consent of the other, is not against public policy, and the property acquired under such an agreement belongs to the persons thus acquiring the same; and in a contest between the parties to such a contract over the title to the land acquired under it, the policy or impolicy of the contract under which the land was acquired is immaterial.

De Leon v. Trevino, 49 Texas, 88; Bailey v. Harris, 19 Texas, 109; James v. Fulcrod, 5 Texas, 512; Mora. on Corp., sec. 724, and authorities.

4. If the parties to a contract which is illegal and void have acquired property in pursuance of the contract, and one party proposes to hold the property thus acquired without adequately compensating the other party, the party holding the property will be estopped from setting up the illegality of the contract in defense to an action brought against him for the portion of the property wrongfully held, and the courts will not refuse to deal with the property according to the equities of the parties therein on the ground that the contract under which it was acquired was illegal. De Leon v. Trevino, 49 Texas, 88; Mora. on Priv. Corp., sec. 724; Casey v. Credit Mobilier, 2 Wood, 77; Bank v. Meadowcroft, 95 Ill., 124; Miller v. Alexander, 8 Texas, 44, 45.

*W. G. Eustis,* for Exchange Bank.— 1. When the contract is executed and the corporation has received the benefit it is estopped to deny its authority to make it.

The Henrietta National Bank, by its receiver, Frank Brown, on the 23rd day of July, 1888, entered into a written contract, by the terms of which L. C. Barrett was employed to defend a suit then pending in the District Court of Clay County, brought by the British and American Mortgage Company, limited, against the Henrietta National Bank and others.

This suit referred to in the contract was brought July 8, 1888, by said British and American Mortgage Company against the Henrietta National Bank and against the Exchange Bank.

The consideration for the contract as to L. C. Barrett was that he was to defend the Henrietta National Bank in the said suit pending, and the consideration for the contract as to the Henrietta National Bank and the Exchange Bank was that the Exchange Bank had a claim to an undivided half of the lands involved in said pending suit, and it was not deemed advisable to contest said claim, but deemed best for both of said banks to act jointly in any suits instituted for said land. Said contract further specified that said banks are to share jointly in whatever lands are recovered either by suit or compromise; also specified "it being understood that said Exchange Bank is jointly interested with the said Henrietta National Bank in whatever land or money is recovered by said suits or compromise of same."

Frank Brown, receiver of the Henrietta National Bank, testified that he had compromised the suit and got a quitclaim deed to the property in controversy in said compromise, and proposed to keep it.

· The court in its conclusions of fact finds that the property in controversy was deeded to the Henrietta National Bank in consideration of a release by said bank of their claim on the 15,000 acres property in controversy with the British and American Mortgage Company; and in its con-

clusions of law finds that the title of E. F. Ikard to the property in controversy in this suit passed to the Merchants National Bank, and not to the Henrietta National Bank; and that by the terms of the contract between the Henrietta National Bank, L. C. Barrett, and the Exchange Bank, the Exchange Bank was to receive one-half of the property in controversy.

The Henrietta National Bank having signed the said contract, it was not necessary for the other parties to the contract to sign it, but it was also signed by L. C. Barrett. Railway v. Gentry, 69 Texas, 625; Casey v. Credit Mobilier, 2 Wood, 77; Myers' Fed. Dec., vol. B, sec. 300; Mer. Bank v. State Bank, 10 Wall., 604; Salt Lake City v. Hollister, 118 U. S., 256; Hitchcock v. Byers, 96 U. S., 341.

2. The court erred in rendering judgment for plaintiff and defendant for the land in controversy, and in not rendering judgment for the Exchange Bank, intervenor, for one-half of the lands in controversy—that is, for one-half of the 153 acres in controversy and for one-half of the one-fourth of lot 5 in block 14 in controversy, the contract between the parties entitling said intervenor to same.

*A. K. Swan,* for appellee.— 1. The receiver of a national bank can neither sell, dispose of, nor encumber the property of an insolvent bank without an order of a court of competent jurisdiction. Nor has he authority to make a contingent executory contract with reference to such property without such order, and therefore the contract relied upon by appellant was void. Rev. Stats. U. S., art. 5234; Beach on Receivers, 279; Vanderbilt v. Little, 35 Am. and Eng. Ry. Cases, 18.

2. Any contract which deprives the receiver of the power or privilege of settling up the business of the bank of which he is receiver in accordance with the national bank law is against public policy and void. Rev. Stats. U. S., art. 5234.

3. A contract fraudulently induced or obtained for the purpose of getting an undue advantage or in violation of the law is against public policy and can not be enforced or redress had in a court of equity for its breach.

4. If any action could accrue to appellant under the contract relied on by appellant, it would either be for the property described in and with reference to which the contract was made or for damages, unless title had passed by execution sale after the bank had acquired the property. Brown was the receiver of appellee bank, and in making the compromise with the Merchants National Bank did so under instructions and by authority.

STAYTON, CHIEF JUSTICE.—The Henrietta National Bank, then being in the hands of a receiver, held a note claimed to be secured by a trust deed on about 15,000 acres of land. The British-American Mortgage Company had a mortgage on the same land to secure a much larger debt.

The receiver seems to have had no confidence in the superiority of the lien held by the national bank represented by him, but he made a contract with appellant whereby the claim of the bank was to be placed under his control and management, with an agreement that he should have one-half of the land that might be procured through the claim, or one-half of the proceeds of the bank's claim.

To make this contract the receiver had no authority from any court nor from the Comptroller of the Currency who appointed him.

After the contract was made there seems to have been an effort to sell the land under the trust deed held by the bank, which was prevented by a writ of injunction sued out by the British-American Mortgage Company.

Appellant rendered some services in reference to this matter, but the mortgage company foreclosed its lien on the land, and the Merchants National Bank at the foreclosure sale became the purchaser.

After the Merchants National Bank bought the land a suit was instituted by it against the Henrietta National Bank, which seems to have been compromised by an agreement that the last named bank would pay one-half of the costs and release its claim of lien on the land.

The consideration from the Merchants National Bank was a conveyance to the receiver of the Henrietta National Bank of the 153 acres of land and part of the lot in controversy in this action, which was no part of the land on which the two banks claimed lien, but land to which the Merchants National Bank had acquired title through another source.

The agreement between the receiver and appellant contained a provision "that no compromise is to be made without the consent of L. C. Barrett and the Henrietta National Bank." The court below held that the receiver had no lawful power to make the contract on which appellant relies for title, and we are of opinion that this ruling was correct. The receiver had power to employ counsel to represent him in such litigation as he deemed necessary, and to pay the reasonable value of such services, but he had no power to make such an agreement as was made.

In Terrell v. Teal, 48 Texas, 509, it appeared that an administrator had agreed to convey as a fee to an attorney a tract of land belonging to the estate. This was done, and the conveyance approved by the Probate Court, but this court held that the administrator had no power to make such a contract, and that the decree of the Probate Court gave no validity whatever to the deed. It was said that "to concede to administrators such power would virtually surrender to them the unrestricted management and disposal of the entire property of the estates they represented."

The law regulating the appointment of receivers of the property of national banks and declaring their powers and duties does not recognize the existence of such a power as the receiver in the matter before us attempted to exercise. As the contract referred to is the sole basis of appellant's right, he can not recover further than he did on the disclaimer of appellee,

:and it is unnecessary to consider other matters presented by him which could not affect the ultimate decision of the case.

In the contract between the receiver and Barrett it was recognized that the Exchange Bank of Dallas had claim to an interest in the mortgaged lands equal to that held or claimed by the Henrietta National Bank, but the Exchange Bank was not a party to that agreement. That contract further recognized that the Exchange Bank should have one-half of the lands or money recovered in the contemplated litigation through the suit or by compromise. The Exchange Bank made itself a party to this action and claimed the land sued for by Barrett, but offered no evidence of its right other than such as may have been recognized in the contract between the receiver and Barrett. That contract evidently had reference only to the lands on which the two banks were claiming liens or other interest, and was not made for the purpose of evidencing any right of the Exchange Bank, but in so far as it referred to any interest of that bank this was done for the purpose of restricting Barrett to an interest in such recovery as might be had by the Henrietta National Bank. If the Exchange Bank had any interest in the land in controversy that fact should have been proved, and the mere declaration of the receiver, not made with intent to evidence a right of that bank in or to any interest in land, would not be evidence of such right, even if his power to have made a conveyance to the Exchange Bank was shown.

So far as the record shows, all the consideration for the conveyance through which the Henrietta National Bank claims the land in controversy moved from that bank, and no right or claim which the Exchange Bank may have held on the mortgaged lands is shown to have been relinquished or in any manner affected.

The Exchange Bank not having shown any title to the lands in controversy, the court did not err in so adjudging. There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered October 21, 1890.