JOHN A. TILLIARD, EXECUTOR, V. WILLIAM HALL.

No. 693.

**1. Limitation—Action on Foreign Contract.**

The time of limitation of actions upon foreign contracts depends on the law of the State in which the action is brought, and not on that of the place where the contract is made.

**2. Same—Partial Payments.**

Partial payment of principal or interest does not interrupt the running of limitation in this State.

APPEAL from Kimble. Tried below before Hon. W. M. ALLISON.

*W. R. Harris & Son, Rudolph Runge* and *A. W. Moursond,* for appellant.—The court erred in concluding and holding that the claim sued upon was barred by the statute of limitation of four years. . Jessup v. Carnegie, 80 N. Y., 441; 36 Am. Rep., 643; 24 Fed. Rep., 922; Hanson v. Story, 5 Cranch, 289; Agman v. Sheldon, 12 Wend., 439; 27 Am. Dec., 137; Laird v. Hodges, 26 Ark., 356; Gilman v. Stevens, 63 N. H., 342; Mo. Safe Co. v. Norton, 48 N. J., 415; 57 Am. Rep., 566; Graves v. Ray, 13 La., 454; 33 Am. Dec., 568; Banchor v. Gregory, 9 Mo. App., 102.

*W. A. Williamson* and *Burney & Garrett,* for appellee.—The lex fori and not the lex loci contractus controls as to when suit may be brought, when cause of action accrued, and in what time a cause of action is barred by limitation, as well as to what will suspend the running of the statute of limitation or renew a debt that is barred by limitation, and also controls as to all matters effecting the remedy or right to sue. Sayles' Civil Stat. of Texas, arts. .3224, 3205, 3219; Gautier v. Franklin, 1 Texas, p. 733; Snody v. Cage, 5 Texas, p. 106; Love v. Doak, 5 Texas, 344; Moore v. Hendrick, 8 Texas, 253; Thompson v. Berry, 26 Texas, 263; McDowell v. Collier & Son, 2 Willson C. C., sec. 266; Corrigan v. Semple, 72 Texas, 306; Townsend v. Jamison, 9 Howard, 407; Burgett v. Williford, 19 S. W. Rep., 750; Angell on Limitations, sec. 65; Story on Conflict of Laws (7 ed.), sec. 577; 7 Waits

. Act. & Def., 234, 235, 247;  Waterman v. Sprague Manuf'g Co., 55 Conn., 554-576;  Stirling v. Winter, 80 Mo., 141;  Windom v. Howard, 26 S. W. Rep., 483.

NEILL, ASSOCIATE JUSTICE.—This suit was originally instituted in the District Court of Kimble County, on the 18th day of August, 1893, by Jno. A. Tilliard, as the administrator of the estate of Helen S. Hope, deceased, against the appellee, William Hall, to recover a balance due on a certain mortgage described in our first conclusion of fact.

Afterwards, as shown in our seventh conclusion, Frank Vickery, as temporary administrator· of Miss Hope's estate, joined Tilliard as a plaintiff in the suit.

The appellee, defendant below, filed a plea in abatement, in which he alleged that John A. Tilliard was, as shown from the allegations in his petition, a foreign executor and administrator of Helen S. Hope, deceased, whose will had never been probated in any county in this State, nor letters of administration granted, etc.

He also filed a plea in abatement as to Vickery's capacity to sue, alleging that the county judge of Kimble County was without jurisdiction to appoint him temporary administrator of the estate, etc.  He then plead the general denial and the four years statute of limitations.

The plea in abatement, as against Tilliard, was sustained, and that as to Vickery overruled.  Exceptions were taken by the respective parties to these rulings.

Upon final hearing the court found in favor of appellee on his plea of limitations and entered judgment in his favor, from which judgment this appeal is prosecuted.

*Conclusions of fact.*—1.   On the 6th day of August, 1884, William Hall, then a resident citizen of Sussex County, England, executed in England to Henry Bayley and John A. Tilliard, residents and citizens of London, England, a mortgage on a certain parcel of land situated in the parish of Lancing, of Sussex County, England, to secure them in the payment, on the 26th day of February, 1885, of the principal sum of two thousand pounds sterling, with interest thereon at the rate · of four pounds ten shillings per centum per annum.

2.   On June 24, 1886, the mortgagees transferred the mortgage to Miss Helen S. Hope, who died in England on the 2d day of January, 1893, leaving a will by which she appointed John A. Tilliard and Andrew D. Scales her executors and trustees, and bequeathed to them all her property, to hold by them as trustees for Herbert and Adelaide Turner, her half brother and sister.   Mr. Scales renounced his trust under the will.   The will of Miss Hope was probated in England in 1893, and John A. Tilliard qualified as administrator of her estate on the 29th day of March, 1893.   The will was deposited with the registrar of London, England, but it has never been recorded anywhere.

3.  On November 1, 1888, William Hall moved into Kimble County, Texas, from England, and on March 17, 1889, purchased resident property there, and has, with the exception of six months, from March to September, 1891, when he visited England and the West Indies, continuously resided in Kimble County ever since.  And on October 31, 1890, he filed in the District Court of Kimble County his declaration of his intention to become a citizen of the United States of America, and afterwards became a citizen by taking out his final naturalization papers.

4.  William Hall made payments of interest on said mortgage obligation as follows:

On April 1, 1885, interest accrued to February 26, 1885.

On November 1, 1885, interest accrued to August 26, 1885.

On March 5, 1886, interest accrued to February 26, 1886.

On December 20, 1886, interest accrued to August 26, 1886.

On April 24, 1888, interest accrued to February 26, 1888.

On September 14, 1888, interest accrued to August 26, 1888.

After November 1, 1888, payments of interest were made on said mortgage by some one—John A. Tilliard, in his depositions, saying such payments were made by "William Hall, his agent, or agents," the following being payments, with dates, etc.:

January 5, 1889, interest accrued to February 26, 1889.

September 24, 1889, interest accrued to August 26, 1889.

March 28, 1890, interest accrued to February 26, 1890.

October 14, 1890, interest accrued to August 26, 1890.

April 10, 1891, interest accrued to February 26, 1891.

Nov. 16, 1891, interest accrued to August 26, 1891.

These payments last above mentioned were not made by William Hall in person, and said Hall did not know of said payments until after this suit was filed.  But when Hall left England, in 1888, he left a general agent there to look after his business matters, who had authority to collect money due and pay debts against him; said agency continued until sometime after Hall visited England in 1891, when said agent absconded and went to Australia.  The last payment of interest made by defendant Hall, or made with his knowledge, on such debt, was on September 14, 1888, being interest to August 26, 1888.  That on the 29th day of September, 1892, the defendant having made default in payment of semi-annual interest, the mortgage heretofore described was foreclosed and the property described sold to Arthur Robert Wickham, then and now a citizen of England.  The original mortgage, together with the transfer thereof, in writing, by the payees to Miss Helen S. Hope, are now in the possession of the said Wickham, and have never been recorded anywhere; said property having been sold for fifteen hundred pounds sterling.  The costs incurred in such foreclosure proceedings being £37, 8s. 6d., as attorney's fees, and £94, 7s. 5d. as auctioneer's fees and commissions.

5.  The following was on the trial proven to be the law of England:

(1) A mortgagor shall not exercise the power of sale conferred by this act, unless and until "some interest under the mortgage is in arrear and unpaid for two months after becoming due."

(2) There shall be deemed to be included, and there shall by virtue of this act be implied, in the mortgage deed: First. A covenant with the mortgagee by the person expressed as mortgagor to the following effect: "That the mortgagor will, on the stated day, pay to the mortgagee the stated mortgage money with interest thereon in the meantime at the stated rate, and will thereafter, if and as the mortgage money, or any part thereof remains unpaid, pay to the mortgagee interest thereon, or on the unpaid part thereof, at the stated rate by equal half yearly payments, the first thereof to be made at the end of six calendar months from the day stated for the payment of the mortgage money." Secondly. A proviso to the effect following, namely: "That if the mortgagor, on the stated day, pays to the mortgagee the stated mortgage money, with interest thereon in the meantime at the stated rate, the mortgagee, at any time thereafter, at the request and cost of the mortgagor, shall reconvey the mortgaged property to the mortgagor, or as he shall direct."

(3) The money which is received by the mortgagee arising from the sale after the discharge of prior incumbrances to which the sale is not made subject, if any, or after payment into court under this act of a sum to meet any prior incumbrances, shall be held by him, in trust; to be applied by him, first, in payment of all costs, charges and expenses properly incurred by him as incident to the sale, or any attempted sale, or otherwise; and secondly, in discharge of the mortgage money, interest and costs, and other money, if any, due under the mortgage; and the residue of the money so received, shall be paid to the person entitled to the mortgaged property, or authorized to give receipts for the proceeds of the sale thereof.

(4) No action or suit or other proceeding shall be brought to recover any sum of money secured by any mortgage, judgment or lien, or otherwise charged upon or payable out of any land or rent, at law or equity, or any legacy, but within twelve years next after a present right to some person capable of giving a discharge for or release of the same, unless, in the meantime, some part of the principal money, or some interest thereon, shall have been paid, or some acknowledgment of the right thereto shall have been given in writing, signed by the person by whom the same shall be payable, or his agent, to the person entitled thereto, or his agent: and in such case no such action or suit or proceeding shall be brought, but within twelve years after such payment or acknowledgment, or the last of such payments or acknowledgments, if more than one is given.

(5) That by the laws of England, when interest is overdue on a mortgage to secure the payment of money, as in this case, the mortgagee is entitled to realize his security when such interest is overdue for three months, by sale of the property so mortgaged, the English statute on this point being as follows: "A mortgagee, when a mortgage is made

by deed, shall, by virtue of this act, have the following powers to the like extent as if they had been in terms conferred by the mortgage deed, but no further, namely:  A power, when the mortgage money has become due, to sell, or to concur with any other person in selling, the mortgaged property or any part thereof, either subject to prior charges or not, and either together or in lots, by public auction or private contract, subject to such conditions respecting title, or evidence of title, or other matters, as he (the mortgagee) thinks fit, with power to vary any contract for sale, and to buy in at auction or to rescind any contract for sale,  and  to resell, without being answerable  for any loss occasioned thereby." Further, "A mortgagee shall not exercise the power of sale conferred by this act, unless and until some interest under the mortgage is in arrear and unpaid for two months after becoming due." Further, "The power of sale conferred by this act may be exercised by any person, for the time being, entitled to receive and give a discharge for the mortgage money."  Further, "The mortgagee, his executors, administrators or assigns, shall not be answerable for any involuntary loss happening in or about the exercise or execution of the power of sale conferred by this act, or of any trust connected therewith.  44 & 45 Vict., ch. 41, secs. 19-21.

(6)  It was also proved by parol, that by the common law of England aliens have the same right to sue and recover in the courts of said country as subjects or citizens thereof.

6.  On August 18, 1893, John A. Tilliard, describing himself as administrator of the estate of Miss Helen S. Hope, deceased, and as a resident citizen of London, England, filed his original petition in this cause against the appellee to recover of him the sum of seven hundred and twenty-five pounds sterling, or its value, the balance due on said mortgage.  On the 22nd day of October, 1894, by leave of the court, he filed his amended petition describing himself as trustee for Herbert R. Turner and Adelaide L. Turner, and suing as such trustee.

7.  On March 25, 1895, Frank Vickery qualified as temporary administrator of the estate of Helen S. Hope, and on that day, as such administrator, made himself a party plaintiff by filing with the original plaintiff his petition in this cause.  But the will of Miss Hope was never probated in Texas.


*Conclusions of law.* —As we shall hold that the action was barred by the statute of limitations, it will be unnecessary for us to discuss or pass upon the assignments questioning the rulings of the court upon the pleas in abatement; for, if the cause of action was barred when the suit was instituted, it could not be maintained against the plea of limitation by any party.

"While it is a well settled rule that personal contracts are to have the same validity and force and be subject to the same interpretation in every other country as they have in the country where they are made

or are to be executed, it is equally well settled that remedies on contracts are to be pursued according to the law of the place where the action is instituted, and not according to the law of the place where the contract is made, and hence that the time of limitation of actions upon contracts depends on the law of the State in which the action is brought, and not on the law of the State where the contract is made." Buswell's Limitations of Actions, sec. 347; Wood on Lim. of Actions, sec. 8; Snoddy v. Cage, 5 Texas, 106; Gauiter v. Franklin, 1 Texas, 733. As the time fixed by the mortgage for the payment of the debt was February 26, 1885, and it was not paid, the cause of action then accrued, and the statute began to run. The laws of England, quoted in our findings of fact, in reference to foreclosure of mortgages, do not affect one's right to sue upon the maturity of his demand, but only his right to foreclose his mortgage security. The payment of the interest on or part payment of the debt does not in this State stop the running of the statute up to the time of such payment, but it continues to run from the accrual of the cause of action. Therefore, as the uncontradicted evidence shows that more than four years had elapsed, exclusive of the time the statute was suspended by reason of the death of Miss Hope and the absence from this State by the appellee, from the time the cause of action accrued until the suit was instituted, judgment was properly rendered in favor of the appellee, and it is affirmed.

*Affirmed.*

Delivered October 16, 1895.