TOURTELOT et al. v. BOOKER.

(Court of Civil Appeals of Texas. El Paso. June 26, 1913. On Rehearing, Nov. 6, 1913.)

1. JUDGMENT (§ 822*)—JUDGMENTS OF FOREIGN ·STATE—SUFFICIENCY.

A money judgment, rendered in another state upon a confession of indebtedness made without a suit against the defendant having been filed, as was permitted by the laws of that state, and which shows that it is a sentence of the court rendered in favor of one party and against the other, and that it is a definite, final, and absolute sentence of law binding upon the parties, is a judgment to which full faith and credit must be given.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1454, 1488–1490, 1496–1500; Dec. Dig. § 822.*]

2. EVIDENCE (§ 35*)—JUDGMENT (§ 822*)— JUDGMENT OF FOREIGN STATE—CONSTITUTIONAL PROVISIONS.

The full faith and credit clause of the federal Constitution, article 4, § 1, does not require one state to take judicial knowledge of the laws of another; but, when those laws are proved as facts, and it is shown that a judgment was rendered in conformity therewith, that judgment must be given the same effect it would have in the state in which it was rendered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51; Dec. Dig. § 35;* Judgment, Cent. Dig. §§ 1454, 1488–1490, 1496–1500; Dec. Dig. § 822.*]

3. BANKS AND BANKING (§ 287*)—RECEIVERS —SALE OF ASSETS—ORDER OF COURT.

Under U. S. Comp. St. 1901, § 5234, providing that a receiver of a national bank may sell the assets of the bank upon an order, of a court of record of competent jurisdiction, such order is a prerequisite to a valid sale by the receiver.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1089–1104, 1126, 1127; Dec. Dig. § 287.*]

4. WORDS AND PHRASES—"COURT OF RECORD."

A "court of record" is one the history of whose proceedings is perpetuated in writing by some duly authorized person (quoting Words and Phrases, vol. 2, pp. 1686–1688).

5. EVIDENCE (§ 348*) — DOCUMENTARY EVIDENCE — RECORDS OF COURTS OF SISTER STATES.

Records of the courts of a sister state may be proved by copies thereof authenticated as required by U. S. Comp. St. 1901, § 905, or by copies duly examined by some witness, but it must first be shown that an order has been entered of record before proof thereof can be made in any of these forms.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1361–1383; Dec. Dig. § 348.*]

6. EVIDENCE (§ 340*) — DOCUMENTARY EVIDENCE—RECORDS OF COURTS.

A copy of an order of a court; authorizing the receiver of a national bank to sell the assets of the bank, authenticated by the Comptroller of the Currency, as required by U. S. Comp. St. 1901, § 884, but which order was never recorded or made a minute in any court, is inadmissible to establish such order as an order of a court of record.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1294–1301; Dec. Dig. § 340.*]

7. JUDGMENT (§ 518*)—FOREIGN JUDGMENTS— COLLATERAL ATTACK.

An objection to such evidence is not a collateral attack upon an order of the court, for there is failure of proof that any order was ever made.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 961, 962; Dec. Dig. § 518.*]

8. JUDGMENT (§ 934*)—ACTIONS ON FOREIGN JUDGMENT—LIMITATIONS.

The statute of limitations may be pleaded in defense to an action upon the judgment of a sister state, since such statute affected the remedy, and not the right, and is therefore governed by the law of the forum.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1764, 1766–1768; Dec. Dig. § 934.*]

9. JUDGMENT (§ 934*)—ACTIONS UPON JUDGMENT—LIMITATIONS.

Under Rev. St. 1895, art. 3361, providing that if execution is not issued upon a judgment within one year, the judgment may be revived by scire facias or action brought within 10 years and not after, an action upon a judgment of a foreign state, rendered more than 10 years prior to the commencement of the action, and upon which execution was never issued, and which was never revived, is barred.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1764, 1766–1768; Dec. Dig. § 934.*]

10. JUDGMENT (§ 910*)—ACTIONS UPON JUDGMENT—LIMITATIONS.

Under that article (Rev. St. 1895, art. 3361), if no execution has been issued, the limitation begins to run from the entry of the judgment, not at the expiration of the year allowed for execution; and, where execution has been issued, the time runs from the date of the issuance of the last execution, within the time allowed by law.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1732–1737; Dec. Dig. § 910.*]

11. LIMITATION OF ACTIONS (§ 84*)—ACCRUAL —ABSENT PARTY—ACTION ON JUDGMENT.

The facts that the judgment defendant had not resided in Texas for 10 years next before the bringing of an action upon the judgment of a foreign state does not prevent the operation of the statute of limitations, since the absentee clause of the statute does not apply to nonresidents or parties living outside of the state at the time of the accrual of the right of action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 439–448; Dec. Dig. § 84.*]

12. JUDGMENT (§ 934*)—ACTIONS ON FOREIGN JUDGMENT—LIMITATIONS.

Rev. St. 1895, art. 3359, providing that actions upon foreign judgments which are barred by the laws of the state where the judgment was rendered shall be barred in Texas, and that, whether so barred or not, no such action shall be brought against one who has resided in the state within 10 years next preceding the bringing of the action, upon any judgment rendered more than 10 years before.

is cumulative of the other articles of limitation.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1764, 1766–1768; Dec. Dig. § 934.*]

13. JUDGMENT (§ 934*)—FOREIGN JUDGMENT—CONSTITUTIONAL PROVISIONS—LIMITATION.

The full faith and credit clause of the federal Constitution does not restrict the right of the state to prescribe a reasonable limitation period for bringing actions upon judgments of sister states.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1764, 1766–1768; Dec. Dig. § 934.*]

14. JUDGMENT (§ 928*)—ACTIONS UPON FOREIGN JUDGMENT — LIMITATION — DORMANT JUDGMENT.

A judgment rendered in North Dakota, which has become dormant under Rev. Codes (N. D.) 1899, §§ 5500, 5200, 5210, of that state as construed by its courts, cannot be enforced by an action in Texas.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 928.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by E. C. Tourtelot and others against L. E. Booker. Judgment for the defendant, and plaintiffs appeal. Affirmed.

McBroom & Scott, of El Paso, for appellants. Turney & Burges, T. A. Falvey, and Stanton & Weeks, all of El Paso, for appellee.

McKENZIE, J. Appellants E. C. Tourtelot and T. D. Hogan filed this suit on the 21st day of September, 1911, in the district court of El Paso county, Tex., against appellee, L. E. Booker, to recover upon a judgment rendered in a district court of North Dakota. Trial was had before a jury upon plaintiff's first amended original petition, the defendant's answer, and the plaintiffs' first and second supplemental petitions. The judgment sued upon is alleged to be as follows:

"State of North Dakota, County of Grand Forks. In the District Court, First Judicial District. E. C. Tourtelot, as Receiver of the Grand Forks National Bank of Grand Forks, North Dakota, Plaintiff, v. L. E. Booker, Defendant.

"Confession of Judgment.

"I, L. E. Booker, of the city and county of Grand Forks and state of North Dakota, do hereby confess judgment herein in favor of E. C. Tourtelot, as receiver of the Grand Forks National Bank, of Grand Forks, N. D., for the sum of $31,000, and authorize judgment to be entered therefor against me, with legal interest thereon from the 14th day of July, A. D. 1897. This confession of judgment is for a debt justly due and owing to the said E. C. Tourtelot as receiver of the Grand Forks National Bank of Grand Forks, N. D., arising upon the following facts, to wit: Whereas the said Grand Forks National Bank was, on or about the 6th day of February, A. D. 1885, duly organized under and by virtue of the 'National Bank Act' of the Congress of the United States of America, and acts amendatory thereto, and authorized to do business as a national banking association, and ever since said date, and up to the 23d day of April, 1896, transacted and carried on such business incident to said national banking association by reason thereof; and whereas, on or about the 23d day of April, 1896, said national bank was insolvent, and the Comptroller of the Currency of the United States of America, after due examination of the affairs of said Grand Forks National Bank, and therefrom becoming satisfied that said Grand Forks National Bank was insolvent, did on or about the 23d day of April, 1896, declare such insolvency to exist, and did assume and take charge of the affairs of said bank; and whereas, that heretofore, to wit, on or about the 15th day of August, 1896, the above-named plaintiff was, by the Comptroller of Currency of the United States of America, duly appointed receiver of the Grand Forks National Bank aforesaid, and thereafter duly qualified as such and entered upon the discharge of his duties as such receiver, and ever since said date has been and still is such receiver and in charge of the assets of said bank; and whereas, the capital stock of the said Grand Forks National Bank on the 23d day of April, 1896, was and is 2,000 shares of the par value of $100 each; and whereas, on the 14th day of June, 1897, the said Comptroller of the Currency of the United States of America, having ascertained and determined that the assets, property, and credits of said association were insufficient to pay its debts and liabilities, and, as provided by said acts of Congress, made an assessment and requisition upon the shareholders of the said Grand Forks National Bank. of Grand Forks, N. D., of $100 each upon each and every share of the said capital stock held and owned by them, respectively, at the time of its default, and at the time said bank was found to be insolvent, and so declared by said Comptroller to be insolvent as aforesaid, and directed the plaintiff as receiver thereof to take all necessary proceedings, by suit or otherwise, to enforce to that extent the said individual liability of the said shareholders; that said assessment was made because it was necessary to enable the receiver to pay the said debts and liabilities, and the said Comptroller before making said assessment found and decided that it was necessary for the purpose of paying said debts and liabilities, which said assessment and requisition required that said assessment and payment thereof be made to this plaintiff on or before July 14, 1897, all of which defendant had due notice thereof; and whereas, the said defendant, L. E. Booker, was on the 23d day of April, 1896, and for more than 30 days prior thereto, and

still is, the owner of 310 shares of the capital stock of said Grand Forks National Bank, and the same stands upon the books of said association in his name; and whereas, by reason thereof, and the facts hereinbefore set forth, the above-named defendant is indebted to said plaintiff upon said 310 shares of the capital stock of said Grand Forks National Bank at the rate of $100 for and upon each and every one of said shares of stock, in all the sum of $31,000; and whereas, the said defendant has not paid the aforesaid assessment, nor any part thereof, and there is now due thereon from the said defendant to said plaintiff, by reason of the facts aforesaid, the said sum of $31,000, with interest thereon at the rate of 7 per cent. per annum from July 14, 1897.

"Witness my hand this 10th day of August, A. D. 1897. Lewis E. Booker, Defendant.

"State of North Dakota, County of Grand Forks—ss.: L. E. Booker, being first duly sworn according to law, deposes and says that he is the person who signed the foregoing statement, and that he is the defendant therein named; that he is indebted to the said E. C. Tourtelot as receiver of the Grand Forks National Bank of Grand Forks, N. D., in the sum of $31,000, with interest thereon at the rate of 7 per cent. per annum from July 14, 1897, and that there are no offsets to the same, and that the facts stated in the foregoing confession and statement are true. L. E. Booker.

"Subscribed and sworn to before me this 10th day of August, 1897. Jennie Milne, Notary Public. [Notarial Seal.]

"To the Clerk of the District Court, in and for the County of Grand Forks and State of North Dakota: Under and by virtue of the foregoing confession and statement, you are hereby directed to enter judgment thereon in favor of the said plaintiff therein named, and against the said defendant for the sum of $31,000, with interest thereon at the rate of 7 per cent. per annum from the 14th day of July, 1897, together with the costs of this action to be taxed by you. Dated at Grand Forks, North Dakota, August 27, 1897. Charles J. Fisk, Judge of the District Court.

"In accordance with the foregoing confession of judgment and order for judgment, judgment is hereby rendered in favor of the plaintiff E. C. Tourtelot, as receiver of the Grand Forks National Bank of Grand Forks, N. D., and against the defendant, L. E. Booker, for the sum of $31,000 and interest on said amount from the 14th day of July, 1897, at 7 per cent. per annum, being the sum of $259.19, and the costs and disbursements herein, being the sum of $2, making a total judgment of $31,261.19.

"Witness the Honorable Charles J. Fisk, judge of the First judicial district, state of North Dakota, and my hand and the seal of the district court, this 27th day of August, A. D. 1897. L. K. Hassell, Clerk Dist. Court, By A. C. Hurst, Deputy. [Dist. Court Seal.]"

It is alleged, in substance, in the trial petition that the said Tourtelot, at the time of the recovery of said judgment, was receiver of the Grand Forks National Bank of Grand Forks, N. D., and that the court rendering the judgment was a court of record, having general jurisdiction, and had jurisdiction of the person of. the defendant and of the subject-matter, and that under the laws of the state of North Dakota the judgment entered became a valid and binding judgment for the amount in said judgment stipulated in favor of said Tourtelot as receiver and against the said Booker, and that the said Tourtelot as receiver and the said Booker were the only parties to the suit. It was also alleged that at the time of bringing this suit the said judgment was valid and of full force and virtue in the state of North Dakota, and that the judgment in North Dakota had not been appealed from nor set aside; that no part of it had been paid; that the entire amount was due and owing, and under the laws of Texas it was enforceable against the defendant. It was also alleged that after said judgment was obtained in the district court of North Dakota the said Tourtelot resigned as receiver of said bank, and that one W. B. Wood was appointed and qualified as receiver in his stead; that thereafter the said Wood, as receiver of said bank, acting under proper authority, sold said judgment, and that by due course of assignment appellants became the owners of same, and entitled to recovery thereon, and that under the laws of the state of North Dakota the said judgment bears interest at the rate of 7 per cent. per annum from its date, and that appellants should recover of defendant the amount of the judgment, with interest thereon at 7 per cent. per annum.

The defendant answered, alleging, in substance, that the district court of North Dakota was without jurisdiction to hear and determine said cause against him, or to enter judgment against him, because he was not served with any process issuing out of said court in a suit then pending, nor did he enter appearance or confess judgment in any suit pending against him in said state, and that the judgment sued upon for said reason was null and void. Defendant also pleaded the 10-year statute of limitation of the state of North Dakota and of the state of Texas as a defense against appellants' recovery against him upon said judgment, and further alleged that no execution had ever issued out of the said court of North Dakota upon said judgment; that said judgment by reason thereof, and by virtue of the laws of the state of North Dakota and of the state of Texas, was dormant, void, and without force or effect at the time of the filing of this suit, and that plaintiffs should not be permitted to recover thereon. It was also alleged that the

plaintiffs and their predecessors in title failed to revive said judgment as recovered by them in the state of North Dakota, or to do any act as required by the laws of North Dakota to keep said judgment in force and effect, or to keep same from being barred by the statute of limitation of 10 years of that state or of this state, and that said judgment was barred at the time of the institution of this suit; that plaintiffs had not availed themselves of the right to revive said judgment, as provided · for by the statutes of North Dakota, and that the time within which they may do so has expired. Defendant further pleaded the two and four year statutes of limitation of the state of North Dakota and of this state against the plaintiffs' recovering any interest upon said judgment.

In plaintiffs' supplemental petitions it was alleged, in substance: That while the period of 10 years is the general limitation period applicable to judgments under the laws of North Dakota, there is in force in North Dakota a statute which prevents or suspends the operation of said statute of limitation when the defendant is absent from that state, which statute is as follows: "Section 5210. Exception. Absentee. If, when the cause of action shall accrue against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited after the return of such person into the state; and if after such cause of action shall have accrued such person shall depart from and reside out of this state and remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." That since the entry of said judgment the defendant has resided out of said state of North Dakota, and has been absent therefrom ever since said judgment was entered. That under the laws of North Dakota the running of the statutes of limitation in favor of the defendant was tolled or suspended. That the defendant has not resided in the state of Texas for 10 years next before the filing of this suit in the state of Texas, and that the renewal of the judgment by affidavit, as provided for by the statutes of North Dakota, was not the exclusive means for the renewal or revival of judgments, but was only cumulative.

The case was tried with a jury. After the close of the testimony the court peremptorily instructed the jury to return its verdict for defendant, which was done, and judgment was entered for defendant accordingly.

Appellants' first assignment of error is based· upon the court's refusal to peremptorily charge the jury to return a verdict for them. The assignment, with the several propositions thereunder, brings into review the entire proceedings of the trial. We deem it only necessary to notice the questions involved in this appeal, which we think vital and decisive of the case.

[1] We may state at the outset, however, that it is our opinion that the judgment sued upon conforms to the law and procedure of the state of North Dakota, and at the time of its rendition and entry was a valid judgment of that state as against the defendant. We are further of the opinion that the court did not err in permitting the plaintiffs to introduce in evidence the laws of North Dakota to sustain the judgment in the absence of special exceptions. We are also of the opinion that the judgment is sufficient in substance and form. It appears therefrom that it is a sentence of a court rendered between adverse parties, in favor of the one party against the other, and apparently it is a definite, final, and absolute sentence of the law. Being a money judgment, the amount of the recovery is stipulated and certain, and leaves nothing to be determined in the future. Apparently the judgment has the sanction of the law of that state, and is binding upon the parties; and as such it must be given the same faith and credit in this state as it has in the state of North Dakota. According to the more modern doctrine, a judgment is to be tested by its substance rather than its form. Its form is not very material, provided in substance it shows directly, and not inferentially, the judicial character of the act, the nature and scope of the adjudication, and its application to the controversy before the court. 23 Cyc. p. 670; Hamman v. Lewis, 34 Tex. 474; Scott v. Burton, 6 Tex. 322, 55 Am. Dec. 782. Nor is it essential to its validity that any particular terms or phraseology should be used, but the language employed in every case should clearly indicate that the sentence is the judicial act of the court adjudicating the matter in controversy. We are of opinion that the judgment conforms to the above requirements, and is a final judgment. 1 Black on Judgments, § 3. It is true that from the face of the judgment it appears that no suit was filed against the defendant, and that the affidavit confessing the indebtedness was made without a suit having been filed, yet under the laws of North Dakota provision for such procedure is expressly made by statute, and it is not for us to say, in the absence of proof as to some constitutional inhibition of the state of North Dakota, that such judgment in that state would not be authorized, or that same would be void because of that fact. As stated, the judgment appears to be regular, and was obtained in accordance with the procedure of that state, in a court of record which had jurisdiction of the subject-matter and of the person of the defendant, and as such it is not to be gauged by the laws of this state.

[2] Under article 4, § 1, United States Constitution, it is provided that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings

of every other state." This provision of the Constitution implies that the judgments of every state shall be given the same effect by the courts of another state that they have by the law and usage in the state where rendered. This, of course, does not mean that we should take judicial knowledge of the laws of North Dakota, for it is a well-settled rule in this state that such laws are nothing more than matters of fact, which, like other facts, must be proved before acted upon, but when once proved, and it is shown that the judgment obtained was in conformity with such laws, it then becomes the duty of this court to give such faith and credit to such judgment as the judgment would have in the state where obtained; and, if said judgment was valid and conclusive in that state where it was rendered, it is to be considered as valid and conclusive in this state.

[3] It is contended by appellants that, in the sale of the assets of the bank by the receiver, it was not necessary that the order authorizing the sale should be filed or recorded in the minutes of the court; it being sufficient if the order was in fact obtained. Appellants sought to prove the order of the court authorizing the receiver to make the sale of the judgment by offering in evidence a copy of the original copy of a petition of Warren B. Wood, receiver, seeking to make a sale or disposition of the assets of said bank then in the hands of the receiver, also a copy of an order dated September 22, 1902, signed by one "C. J. Fisk, Judge," authorizing Warren B. Wood, receiver, to dispose of the remaining assets of the Grand Forks National Bank of Grand Forks, N. D. The petition and order were authenticated by the Comptroller of the Currency under section 884 of the United States Compiled Statutes of 1901, which section reads as follows: "Every certificate, assignment, and conveyance executed by the Comptroller of the Currency, in pursuance of law, and sealed with his seal of office, shall be received in evidence in all places and courts; and all copies of papers in his office, certified by him and authenticated by the said seal, shall in all cases be evidence equally with the originals. An impression of such seal directly on the paper shall be as valid as if made on wax or wafer."

The petition and order do not appear to have been ever filed with any court or in the clerk's office of any court, nor was it either ever entered in the minutes of any court. Section 5234 of United States Compiled Statutes of 1901, provides as follows: "On becoming satisfied, as specified in sections fifty-two hundred and twenty-six and fifty-two hundred and twenty-seven, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond and security as he deems proper. Such

receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, *upon the order of a court of record of competent jurisdiction,* may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver, shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings."

It is from the last-quoted statute that authority is given to the receiver to make disposition of the assets of the bank. It is there required that before sale of the assets of an insolvent bank is authorized, *an order of a court of record of competent jurisdiction* must be had and obtained. · This order is a necessary prerequisite before any sale of the assets of a bank can be made by the receiver. Turner v. Richardson, 180 U. S. 87, 21 Sup. Ct. 295, 45 L. Ed., 440; Richardson v. Turner, 52 La. Ann. 1613, 28 South. 158; Beckham v. Shackelford, 8 Tex. Civ. App. 660, 29 S. W. 200; Ellis v. Little, 27 Kan. 707, 41 Am. Rep. 434; Barrett v. Henrietta National Bank, 78 Tex. 222, 14 S. W. 569; Wallace v. Hood (C. C.) 89 Fed. 11; In re Earle (C. C.) 92 Fed. 22; In re Third National Bank (D. C.) 4 Fed. 775; People's Bank v. Francis, 8 N. D. 369, 79 N. W. 853.

[4] It will be seen that the statute requires an order from a court of record. This would imply that the order must be obtained from a *court,* as distinguished from an order of a *judge.* The court must be a court of record. A court of record has been defined as being one the history of whose proceedings is perpetuated in writing. Also it is required that some duly authorized person should record such proceedings, and when an act speaks of courts of record it speaks of courts whose proceedings are duly recorded by some authorized person or persons. Words and Phrases, vol. 2, p. 1686. Black's Law Dictionary defines courts of record as being those whose acts and judicial proceedings are enrolled, or recorded, for perpetual memory and testimony.

[5] Section 905 of the United States Compiled Statutes of 1901 provides as follows: "The acts of the Legislature of any state or territory, or of any country subject to the jurisdiction of the United States, shall be authenticated by having the seals of such state, territory, or country affixed thereto. The records and judicial proceedings of the courts of any state or territory, or of any such country, shall be proved or admitted in any other court within the United States, by

the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, Chief Justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and .credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." From this it will be seen that the records and judicial proceedings of the courts of a sister state shall be proved or admitted in any other court within the United States when properly authenticated, as required by said act. This is not the only method, however, of proving a judgment of a court of a sister state. Proof may be made by some witness who has compared the copy offered in evidence with the original *on file in said court*, or by a witness who has examined the copy while another person has read to him the *original* (on file in said court); and, when so proved, such copy is admissible as an examined copy, and is sufficient proof prima facie of said judgment or order. Harvey v. Cummings, 68 Tex. 599, 5 S. W. 513; St. Louis, etc., v. Beilharz, 88 S. W. 512. This does not mean, however, that proof of an order of court of record can be made extraneous of the record. There must first be shown that there was such an order of court, and that same has been entered on the minutes.

[6] We are of opinion that the copies of the papers which were in office of the Comptroller are not admissible in evidence in this cause, because said papers themselves, which were found in said Comptroller's office, would be inadmissible in evidence. They were never filed in any court, nor ever recorded or made a minute of in any court. They were not shown to be the records of any court. They were inadmissible as proof of any fact, and we hold that there is an entire want of proof of authority for the sale, nor sufficient evidence to prove a sale.

[7] Appellants contend that the defendant cannot attack collaterally the order of the court authorizing the sale by the receiver of the assets of said bank. It might be true that collateral attack could not be made as against the order if the order had been proved, but in this case there is a failure of proof that there was such an order. The plaintiffs have failed to show that they are entitled to recover upon said judgment, because they have failed to connect themselves, by proper assignment, with same.

In the trial the defendant pleaded the 10-year statute of limitation of both Texas and North Dakota in bar of plaintiffs' cause of action. He also pleaded that said judgment sued upon was a dormant judgment by reason whereof it was insufficient to support the cause of action. The undisputed proof shows that the judgment was rendered and entered on the 27th day of August, 1897, and that no execution has ever issued upon same, nor has there been any action taken by the plaintiffs or their predecessors in ownership to revive same, or to bring a suit to revive same, until the filing of this suit on the 21st day of September, 1911. It was admitted as a fact upon the trial of the cause that on August 27, 1897, the date when the judgment was rendered, the defendant was a nonresident of the state of North Dakota, residing without said state, and has ever since said time been a nonresident of and resided outside of said state. The defendant has resided in this state since about May 1, 1906.

[8] It is well settled that the statute of limitations of this state may be pleaded in defense to an action on a judgment of a sister state. Snoddy v. Cage, 5 Tex. 106; Fessendon v. Barrett, 9 Tex. 480; Reid v. Boyd, 13 Tex. 241, 65 Am. Dec. 61; Clay v. Clay, 13 Tex. 195; Allison v. Nash, 16 Tex. 560; Spann v. Crummerford, 20 Tex. 216; Tilliard v. Hall, 11 Tex. Civ. App. 381, 32 S. W. 863; McElmoyle v. Cohen, 38 U. S. 312, 10 L. Ed. 177; 23 Cyc. 1564. "It is a well-settled rule that personal contracts are to be interpreted by the law of the place where they are made; and it is a rule equally well settled that remedies on contracts are to be regulated and pursued according to the law of the place where the action is instituted, and not by the law of the place of the contract. The, reason of this rule, according to Story, J., is obvious. 'Courts of law,' says he, 'are instituted by every nation for its own convenience and benefit, and the nature of the remedies and the time and manner of the proceedings are regulated by its own views of justice and propriety, and fashioned by its own wants and customs. It is not obliged to depart from its own notions of judicial order from mere comity to any foreign nation. As a rule, statutes of limitation are to be considered to fall within these remarks. * * *' This rule is in conformity with the universal rule that, as the statute operates merely upon the remedy, the law of the forum, and not the law of the situs of the contract, controls." Wood on Limitations (2d Ed.) § 8, p. 29.

[9, 10] According to our statutes, if execution has not issued within 12 months after the rendition of a judgment, such judgment may be revived by scire facias, or an action of a debt, brought thereon within 10 years after the date of such judgment, and not after. Revised Statutes of 1895, art. 3361. By the terms of the statute just mentioned, where execution has not issued within 12 months after the rendition of the judgment, and it has not been revived by scire facias proceedings or by an action thereon within the 10 years from the date of the judgment, it is then barred. Wilcox v. First National Bank, 93 Tex. 322, 55 S. W. 317. Limitation against a judgment commences to run from date of the issuance of last execution there-

on, and not from the time that the judgment becomes dormant by failure to issue execution within the time prescribed by the laws of this state. Wootters v. Hall, 67 Tex. 513, 3 S. W. 725. The statutes of limitation of this state bar a judgment in 10 years from its date if no execution is issued thereon, or if it has not been revived by scire facias or by a suit. A judgment is also barred in 10 years from the date of the last execution, or, as often stated, it is barred in 10 years from the time of the last act of diligence. If execution has issued upon a judgment within the period of 1 year from date of its rendition, it then remains in activity for a period of 10 years from the time when the execution issued, and this without the necessity of issuance of other executions; but, if no execution issues within 10 years from the date of the last execution, then such judgment is barred. It does not become dormant, in the instance last mentioned, but barred. It becomes dormant, under the laws of this state, only in the event execution is not issued within the period of one year after its rendition. Hence, in order to keep a judgment active after execution has once issued within one year, the time prescribed by the statute, it is necessary that other executions issue, or an act of diligence be made for the collection of the debt under the judgment before the expiration of 10 years from the last issuance of execution or act of diligence, otherwise the judgment is barred. So we hold, as a matter of law, that since no execution has issued upon the North Dakota judgment for a period of more than 10 years from the date of its rendition, under the laws of limitation of this state, it is barred. This, too, in view of the fact that the defendant has not resided in this state for the full period of 10 years next before the bringing of this suit.

[11] In this state, the absentee clause of the statute does not apply to nonresidents or parties living at the time of the accrual of action without this state. Lynch v. Ortleib, 87 Tex. 590, 30 S. W. 545; Huff v. Crawford, 88 Tex. 368, 373, 30 S. W. 546, 31 S. W. 614, 53 Am. St. Rep. 763; Wilson v. Daggett, 88 Tex. 375, 31 S. W. 618, 53 Am. St. Rep. 766; Habermann v. Heidrich, 66 S. W. 106; Habermann v. Heidrich, 66 S. W. 795; Snoddy v. Cage, 5 Tex. 106; Cotton v. Rand, 29 S. W. 682; Wheeler v. Wheeler, 134 Ill. 522, 25 N. E. 588, 10 L. R. A. 613; Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Ed. 172, 177; Bradshaw v. Mayfield, 18 Tex. 21.

[12, 13] Article 3359, Revised Statutes of 1895, provides as follows: "Every action upon a judgment or decree rendered in any other state or territory of the United States, in the District of Columbia or in any foreign country, shall be barred, if by the laws of such state or country such action would there be barred, and the judgment or decree be incapable of being otherwise enforced there; and whether so barred or not, no action against a person who shall have resided in this state during the ten years next preceding such action shall be brought upon any such judgment or decree rendered more than ten years before the commencement of such action." It is our opinion that the article of the statute just quoted is cumulative of the other articles of limitation of this state. If the cause of action is barred in North Dakota, under the last-quoted article, it is also barred here, when the statutes of the sister state are urged as a defense. Giving effect, then, to the statutes of limitations of this state, we hold that the cause of action is barred and that the plaintiffs should not recover herein. As stated, limitation acts only affect the remedy, and as such the state has a right to prescribe a period within which a cause of action may be brought. The full faith and credit clause of the Constitution of the United States does not restrict the right of a state to prescribe a reasonable limitation period for bringing actions upon judgments of sister states. Bacon v. Howard, 20 How. 22, 15 L. Ed. 811.

[14] Under section 5500, Revised Codes 1899 of the Laws of North Dakota, it is provided that executions may issue upon a judgment at any time within 10 years. Section 5200 of said Code provides that actions based on judgments are barred at the expiration of 10 years after a cause of action has accrued thereon and section 5210 already set out in the statement of the pleadings supra of said Code excepts from the period of limitation provided for in section 5200 (supra) for commencing an action the time during which the person against whom the cause of action has accrued is absent from the state. Construing these sections of that Code the Supreme Court of North Dakota, in Weisbecker v. Cahn, 14 N. D. 390, 104 N. W. 513, has held that a judgment cannot be enforced in that state upon an execution issued after the period of 10 years from the date when the judgment was rendered although the judgment debtor has been continually absent from the state during said period; that there is no connection between section 5210, which pertains to the absentee debtor, and section 5500, which pertains to the issuance of execution. The articles mentioned apply to different matters, and neither one controls or affects the other.

We need not decide here the question as to whether, under the laws of North Dakota, the cause of action upon the judgment is barred by the statute of limitation of that state. Under the authority of Weisbecker v. Cahn, supra, the judgment at the time of bringing this suit was dormant, and it was incapable of being enforced in the state of North Dakota unless it be first revived there. Nor do we think it incumbent upon us to decide whether or not, the judgment

being dormant, it could be revived by a suit instituted in the state of North Dakota, since we are of opinion that by the great weight of authority a judgment which has been allowed to become dormant under the laws of the state where it was rendered cannot be enforced by an action in another state, for to allow such enforcement would be to give effect to that which had no effect in the state where said judgment was rendered. Am. & Eng. Enc. of Law (2d Ed.) vol. 13, p. 1002; Chapman v. Chapman, 48 Kan. 636, 29 Pac. 1071; St. Louis, etc., v. Jackson, 128 Mo. 119, 30 S. W. 521; Baker v. Stonebraker, 36 Mo. 339. We are of opinion, therefore, that, the judgment being dormant at the time of the institution of this suit in the state of North Dakota, the plaintiffs should not be permitted to maintain a cause of action upon it in this state.

For the reasons indicated, we are of opinion that the judgment should be affirmed.

Affirmed.

### On Rehearing.

Upon appellants' request, we make additional findings of fact, as follows: The legal rate of interest upon the judgment in the state of North Dakota on August 27th, 1897, was seven per centum per annum, and that seven per centum per annum has been the legal rate of interest upon said judgment since said last-named date to the date of trial of the cause in the district court of El Paso county. The motion for rehearing is overruled.